UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE LEE REYES, #266511,

    Plaintiff,                         Hon. Robert J. Jonker

v.                                           Case No. 1:20-cv-195

JULIE K. FLETCHER, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Fletcher's Motion for Summary Judgment. (ECF No. 26). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be granted.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (ECF No. 1). On or about June 21, 2018, Plaintiff injured his shoulder, after which he sought treatment from prison health care. Plaintiff was examined by a nurse who indicated she would refer Plaintiff to a Physician's Assistant for further evaluation. On July 5, 2018, Plaintiff spoke with a different nurse who indicated that she would again schedule Plaintiff for further examination.

-1-

On July 6, 2018, Plaintiff reported to health care where he was examined by Registered Nurse Julie Fletcher who assured Plaintiff she would refer him for further examination by a Physician's Assistant. Fletcher also provided Plaintiff with pain medication. On July 19, 2018, Plaintiff was informed that he would be examined by a physician on July 25, 2018. But, on July 25, 2018, Plaintiff was again examined by Fletcher. Plaintiff explained that his shoulder injury, exacerbated by his prison job, was continuing to worsen. Fletcher told Plaintiff that she would refer him for further examination by a doctor.

On July 27, 2018, Plaintiff was examined by Physician's Assistant David Huyge. Plaintiff explained that his shoulder injury was worsening and that he was experiencing difficulty functioning. Huyge concluded that, because Plaintiff's injury was "benign," there was no need for x-rays or an MRI examination. Huyge also refused Plaintiff's request for job modification or other accommodation. Instead, Huyge told Plaintiff that "exercise" might help heal his shoulder injury.

On September 7, 2018, Plaintiff was again examined by P.A. Huyge. Plaintiff reported that his shoulder injury was not improving. Plaintiff reported that he was experiencing difficulty climbing into his top bunk and, moreover, was experiencing difficulty performing the heavy lifting duties of his prison job. Huyge again reassured Plaintiff that his injury was "benign" and did not require further examination. Huyge also told Plaintiff that the shoulder tenderness he was experiencing "would eventually heal itself." Huyge did, however, provide Plaintiff with a bottom bunk accommodation.

On November 28, 2018, Plaintiff was again examined by R.N. Fletcher. Plaintiff reported that a painful "bone like growth" was now "protrud[ing] from his shoulder area." Fletcher indicated that she would refer Plaintiff for examination by a doctor. Plaintiff was never examined by a doctor, however. On January 17, 2019, Plaintiff was again examined by R.N. Fletcher who informed Plaintiff, "we are unable to treat your injury any longer." Fletcher also denied Plaintiff's request for pain medication, instead instructing him to "self-medicate" by purchasing over-the-counter medications.

On or about February 14, 2019, Plaintiff was transferred to the Muskegon Correctional Facility (MCF). Upon his arrival at MCF, Plaintiff reported that he was suffering a shoulder injury. On or about March 14, 2019, Plaintiff was examined by Physician's Assistant Barbara Hoover who concluded that Plaintiff probably suffered a rotator cuff tear. Hoover informed Plaintiff that she would schedule him for an MRI examination. This MRI was cancelled, however, by Dr. Vivien Dorsey and Dr. Jeffrey Bomber. A second subsequent request by Hoover for an MRI for Plaintiff was denied by Dr. Keith Papendick.

Plaintiff continued to request medical care for his injured shoulder and was eventually scheduled to participate in physical therapy. On October 2, 2019, Plaintiff reported to begin physical therapy for his shoulder. The physical therapist informed Plaintiff, however, that he likely suffered a torn chest muscle rather than a shoulder injury. The therapist also informed Plaintiff that he would likely always experience pain because his injury did not heal correctly. Plaintiff was later informed by a

Physician's Assistant that the reason his injury was not properly treated initially was "because the (MDOC) does not like to spend the money on these types of procedures cause they are expensive, and not cost effective for their budget."

Plaintiff initiated this action against R.N. Fletcher, P.A. Huyge, and Drs. Dorsey, Bomber, and Papendick. Plaintiff alleges that Defendants denied him proper medical treatment in violation of his Eighth Amendment rights. Defendant Fletcher now moves for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies. Plaintiff has failed to respond to Defendant's motion.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodide*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019). The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue. (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019). The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019). If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

In support of her motion, Defendant Fletcher argues that Plaintiff submitted only one grievance concerning her conduct. Specifically, on October 7, 2019, Plaintiff submitted grievance ICF-19-10-1665-28b alleging that he was "denied medical treatment" by "unknown" medical staff at the Duane Waters facility. (ECF No. 27-4, PageID.183). Plaintiff did not identify the date(s) on which such denial of treatment allegedly occurred. Plaintiff also asserted in his grievance that Defendant Fletcher and several other medical providers denied him proper medical treatment for his shoulder/chest injury. (*Id.*). Again, Plaintiff did not identify the date(s) on which the alleged denial of treatment occurred. (*Id.*).

Plaintiff's Step I grievance was denied on the ground that it was "vague/unclear" contrary to MDOC policy. (ECF No. 27, PageID.184, 268-70). This determination was affirmed at Steps II and III of the grievance process. (ECF No. 27-4, PageID.178-82). As previously noted, MDOC policy requires that a grievance state the issue(s) "briefly but concisely" and identify the "[d]ates, times, places, and names of all those involved in the issue being grieved." MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019). Plaintiff's grievance was properly rejected for failing to comply with this requirement. As the Step I grievance respondent asserts in an affidavit, Plaintiff "did not identify every individual involved, using instead "name unknown" or "unknown Jane Doe." (ECF No. 27-6, PageID.269). Moreover, Plaintiff "did not identify the dates, times, or places where the incident or incidents occurred." Accordingly, Plaintiff's grievance was rejected as improperly vague. (*Id.*).

While Plaintiff has not responded to the present motion, he does assert in his complaint that his claims against Defendant Fletcher have "been fully exhausted" through grievance ICF-19-10-1665-28b discussed immediately above. (ECF No. 1, PageID.15). As discussed above, however, this grievance was properly rejected and, therefore, fails to properly exhaust any claims referenced therein. In short, Defendant has satisfied her burden on the exhaustion question and Plaintiff has failed to submit any evidence creating a genuine factual dispute on this matter. Accordingly, the undersigned recommends that Defendant's motion for summary judgment be granted.

Plaintiff has been afforded ample opportunity to conduct exhaustion-related discovery and to respond to the present motion. Defendant filed her motion on October 19, 2020. Pursuant to the Case Management Order, the filing of Defendant's motion triggered a 45-day window for Plaintiff to conduct exhaustion-related discovery, 28-days after which his response to the present motion was due. (ECF No. 23). On December 10, 2020, the Court granted Plaintiff until January 22, 2021, to conduct discovery on the question whether Plaintiff properly exhausted his claims against Defendant Fletcher. (ECF No. 29). On February 26, 2021, the Court again extended this discovery deadline until March 26, 2021. (ECF No. 32). Despite having had more than six-months to conduct discovery related to the present motion, and respond thereto, Plaintiff has failed to present evidence creating a factual dispute on the question whether he properly exhausted his claims against Defendant Fletcher.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendant Fletcher's Motion for Summary Judgment (ECF No. 26) be granted and Plaintiff's claims against Defendant Fletcher be dismissed without prejudice for failure to properly exhaust administrative remedies. For the same reasons the undersigned makes this recommendation, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                              Respectfully submitted,

Date: July 12, 2021                        /s/ Phillip J. Green
                                              PHILLIP J. GREEN
                                              United States Magistrate Judge