UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE LEE REYES, #266511,

      Plaintiff,                           Hon. Jane M. Beckering

v.                                       Case No. 1:20-cv-195

JULIE K. FLETCHER, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 33).   Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted in part and denied in part and this matter terminated.

## BACKGROUND

Plaintiff initiated this action on March 5, 2020, against: (1) Registered Nurse Julie Fletcher; (2) Physician's Assistant David Huyge; (3) Dr. Jeffrey Bomber; (4) Dr. Keith Papendick; and (5) Dr. Vivien Dorsey.   (ECF No. 1).   Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to provide adequate medical care to treat his injured right shoulder.   Plaintiff's claims against Defendant Fletcher were previously dismissed.   (ECF No. 39, 41).   Defendants Huyge, Dorsey, Bomber, and Papendick now move for summary judgment.   Plaintiff has responded to Defendant's motion.

-1-

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."   *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."   *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts."   *Amini*, 440 F.3d at 357.   The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient.   *Daniels v. Woodide*, 396 F.3d 730, 734-35 (6th Cir. 2005).   The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."   *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

### I. Plaintiff's Eighth Amendment Claims

Plaintiff alleges that Defendants Huyge, Bomber, Papendick, and Dorsey violated his Eighth Amendment rights by failing to provide adequate medical care for his injured shoulder. Specifically, Plaintiff alleges that Defendants improperly failed to order or approve x-rays or an MRI examination to assess his shoulder injury. A review of the medical evidence reveals the following.

On June 21, 2018, Plaintiff reported that he injured his right shoulder "picking up something at work." (ECF No. 33-1, PageID.330). Plaintiff exhibited diminished range of motion, but "was not guarding or wincing in pain." (*Id.*). Plaintiff was "concerned about not being able to climb into his top bunk," but "had no concerns with

going directly back to work." (*Id.*, PageID.330-31).   On July 6, 2018, Plaintiff was examined by R.N. Julie Fletcher.  (*Id.*, PageID.333-34).   An examination of Plaintiff's shoulder revealed limited range of motion, but Fletcher noted that Plaintiff had been "able to continue to work without problem." (*Id.*).   On July 25, 2018, Plaintiff reported "no improvement" regarding his shoulder.  (*Id.*, PageID.337).   The examining nurse also reported that Plaintiff "declines to take any meds for [his shoulder] issue." (*Id.*).

On July 27, 2018, Plaintiff was examined by Defendant Huyge.   (*Id.*, PageID.339-41).   Plaintiff reported "difficulty raising his shoulder," but also reported that he could perform "most of his job," but "just can't push those carts." (*Id.*, PageID.339).   An examination of Plaintiff's shoulder revealed full range of motion with no edema, tenderness, or sensory impairment.  (*Id.*, 340).   Plaintiff exhibited 4/5 or 5/5 strength throughout and the results of various objective tests were negative.  (*Id.*).   Huyge diagnosed Plaintiff with a shoulder sprain and prescribed medication and exercises. (*Id.*).

On August 29, 2018, Plaintiff was examined by R. N. Amy Moody.   (*Id.*, 348-50). Plaintiff reported that he was experiencing "constant" pain which radiated into his clavicle area.   (*Id.*, PageID.348).   An examination of Plaintiff's right shoulder revealed tenderness, but normal sensation and range of motion without evidence of swelling or discoloration.   (*Id.*, PageID.348-49).   Plaintiff reported that exercises and medication were not alleviating his symptoms.   (*Id.*, PageID.350).

On September 7, 2018, Plaintiff was again examined by Defendant Huyge.   (*Id.*, PageID.351-53).   Plaintiff reported that he was experiencing right shoulder pain, but was able to work without difficulty.   (*Id.*, PageID.351).   Plaintiff also reported that he "still exercises with weight."   (*Id.*).   An examination of Plaintiff's shoulder revealed full range of motion without evidence of atrophy, tenderness, or weakness.   (*Id.*, PageID.352).   The results of various objective tests were negative.   (*Id.*).   Huyge diagnosed Plaintiff with a sprain/strain of the rotator cuff.   (*Id.*).   Defendant offered Plaintiff different medications, but Plaintiff "refused" and instead requested "x-rays and MRIs."   (*Id.*, 351-52).   Huyge explained to Plaintiff that given the "minimal findings on physical exam," neither x-rays nor an MRI were warranted.   (*Id.,* PageID.352).

On November 28, 2018, Plaintiff reported that his right shoulder pain had not improved.   (*Id.,* PageID.355).   Plaintiff also reported, however, that he continued to work without difficulty and continued to perform push-ups and pull-ups.   (*Id.*).   Plaintiff's demeanor during examination was "very dramatic," but the results of the examination were unremarkable.   (*Id.*, PageID.356).

On January 17, 2019, Plaintiff was examined by R.N. Fletcher.   (*Id.*, PageID.359-60).   An examination of Plaintiff's right shoulder revealed normal range of movement without weakness or sensory impairment.   (*Id.*, PageID.359).   Plaintiff also reported that he continued to lift weights.   (*Id.*, PageID.360).

X-rays of Plaintiff's right shoulder, taken February 20, 2019, revealed no evidence of fracture, dislocation, osseous abnormality, or joint pathology.   (*Id.*, PageID.373). The soft tissues of Plaintiff's shoulder were likewise "normal."   (*Id.*).   The reviewing doctor concluded that Plaintiff's right shoulder was "normal."   (*Id.*).   On March 2, 2019, Plaintiff reported no improvement in his right shoulder pain.   (*Id.*, PageID.374).   The results of an examination were unremarkable, however, and Plaintiff refused medication.   (*Id.*).

On March 14, 2019, Plaintiff was examined by P.A. Barbara Hoover.   (*Id.*, PageID.375).   Plaintiff exhibited decreased range of shoulder motion and Hawkins testing was positive.   (*Id.*).   Hoover requested that Plaintiff participate in a physical therapy evaluation.   (*Id.*).   Defendant Bomber denied this request the following day on the ground that such was not medically necessary.   (ECF No. 33-1 – 33-5, PageID.376, 517).   Plaintiff met with P.A. Hoover on March 21, 2019.   (*Id.*, PageID.377).   Plaintiff was able to remove and put on his coat without difficulty or discomfort.   (*Id.*).   When Plaintiff exited the appointment, he was "swinging [his] right arm at his side with no apparent signs of distress appreciated."   (*Id.*).

On March 25, 2019, P.A. Hoover requested that Plaintiff undergo an MRI examination of his right shoulder.   (*Id.*, PageID.378).   On April 2, 2019, Defendant Dorsey denied this request on the ground that she was "unable to determine necessity [for an MRI] with the information provided.   Recommend re-evaluation."   (*Id.*, PageID.380).   On June 5, 2019, a second request was submitted for Plaintiff to

participate in an MRI examination of his right shoulder.   (*Id.*, PageID.382).   Defendant Papendick denied this request on the ground that it was merely "a duplicate" of the previous request which had been denied for lack of supporting information.   (*Id.*, PageID.383).

On August 15, 2019, another request was submitted for Plaintiff to participate in an MRI examination of his right shoulder.   (*Id.*, PageID.386).   Defendant Papendick denied this request on the ground that "medical necessity not demonstrated at this time. Continue ROM exercises."   (*Id.*, PageID.387).   On August 29, 2019, P.A. Hoover submitted a request for Plaintiff to participate in physical therapy.   (*Id.*, PageID.388). Defendant Papendick approved this request.   (*Id.*, PageID.389).   A subsequent physical therapy evaluation revealed that Plaintiff was not suffering a shoulder impairment, but rather a "pectorlis tear in [his] chest."   (*Id.*, PageID.390).   Subsequent examinations supported this conclusion.   (*Id.*, PageID.391-94).

A.     Eighth Amendment Standard

The Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs."   *Estelle*, 429 U.S. at 104-06.   The analysis by which a defendant's conduct is evaluated consists of two-steps.

First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). However, if the prisoner "has received on-going treatment for his condition and claims that this treatment was inadequate," he must demonstrate that his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Ibid.*; *see also*, *Phillips v. Tangilag*, 14 F.4d 524, 535 (6th Cir. 2021) ("only grossly or woefully inadequate care – not just care that falls below a professional standard – can be called 'cruel and unusual'").

If the prisoner satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

-8-

In other words, Plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'"   *Greene*, 361 F.3d at 294.   To satisfy this part of the analysis, the prisoner must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish."   *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).

To the extent, however, that Plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, summary judgment is appropriate. *See, e.g., Tangilag*, 14 F.4d. at 535 (the Eighth Amendment is not "a federal malpractice statute"); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner").

B.    Defendant Huyge

Defendant Huyge examined Plaintiff regarding his shoulder complaints on two occasions.   Plaintiff argues that Huyge violated his Eighth Amendment rights by failing to request x-rays or an MRI examination for his right shoulder.   As noted above, Defendant's examinations of Plaintiff did not reveal any significant abnormality.   Also, Plaintiff reported that he was still able to work without difficulty and lift weights for exercise.   Defendant Huyge did not request further studies, such as x-rays or an MRI, for Plaintiff's shoulder because he made the determination that such was not warranted given the results of his examinations.   (ECF No. 35, PageID.528-30).

-9-

Plaintiff has presented no evidence undermining the accuracy of Defendant Huyge's examinations or the reasonableness of his assessment that neither x-rays nor an MRI were warranted at the time.    To the contrary, Defendant's assessment of Plaintiff's right shoulder appears to have been reasonable as it was ultimately determined that Plaintiff, in fact, suffered no shoulder injury.[1]   Defendant Huyge, and others, examined and treated Plaintiff regarding his complaints of shoulder pain despite the absence of evidence that Plaintiff experienced any shoulder injury.   Simply put, Plaintiff received medical care which was neither grossly incompetent, inadequate, or contrary to fundamental fairness.   Instead, Plaintiff's claim against Defendant Huyge is premised on nothing more than his disagreement with Huyge's medical judgment.   As discussed above, however, such disagreement does not implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Huyge;s motion for summary judgment be granted.

---

[1] To the extent Plaintiff argues that Defendant erred by failing to properly diagnose his injury, such sounds in medical malpractice and does not implicate the Eighth Amendment.   *See, e.g., Rouster v. County of Saginaw*, 749 F.3d 437, 446-47 (6th Cir. 2014) ("to prevent the constitutionalization of medical malpractice claims, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment").

C.    Defendant Bomber

Bomber, as Corizon's Medical Director, is not involved in "the day-to-day medical care of inmates."   (ECF No. 33-5, PageID.516).   Instead, he evaluates "requests for medical services and consultations" that cannot be provided onsite.   (*Id.*, PageID.516-17).   When reviewing such requests, Bomber relies on the information provided or identified by the medical provider making the request.   (*Id.*, PageID.517).

On March 14, 2019, P.A. Hoover requested that Plaintiff participate in a physical therapy evaluation.   Defendant Bomber denied the request.   In his affidavit, Bomber asserts that he denied Hoover's request because, in his estimation, imaging of Plaintiff's shoulder was first recommended given Plaintiff's complaint of injury and the findings on examination.   (ECF No. 33-5, PageID.517).   While Plaintiff had, in fact, undergone x-rays of his shoulder the previous month, this fact was not reported in the physical therapy request and was unknown to Defendant Bomber.   (ECF No. 33-1, 33-5, PageID.375, 517).

Plaintiff alleges in his complaint that Bomber violated his rights by failing to "conduct x-ray/MRI examinations" of his right shoulder.   First, there is no evidence that Defendant Bomber ever treated or examined Plaintiff.   Rather, Bomber's involvement in this matter was limited to reviewing requests for treatment which could not be performed on site.   Plaintiff has presented no evidence to the contrary.   Second, there is no evidence that any of Plaintiff's care providers submitted a request to Bomber to approve x-rays or an MRI concerning Plaintiff's right shoulder.

-11-

As detailed in Defendant Bomber's affidavit, his involvement in Plaintiff's care was limited to evaluating a request that Plaintiff participate in a physical therapy evaluation.   To the extent Plaintiff's complaint is interpreted as asserting the claim that Bomber's decision on this matter violated his rights, such is without merit.   Plaintiff has presented no evidence that Bomber was aware, at the time he denied the physical therapy request, that x-rays had been previously performed.   Plaintiff has likewise presented no evidence suggesting that Bomber's judgment that x-rays should precede a physical therapy evaluation is inadequate, constitutes gross incompetence, or violates fundamental fairness.   Defendant's medical judgment appears to have been reasonably exercised as it was ultimately determined that Plaintiff had, in fact, suffered no shoulder injury.   Plaintiff's claim is based on nothing more than his disagreement with Defendant Bomber's medical judgment which does not violate the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Bomber's motion for summary judgment be granted.

D.    Defendant Dorsey

During the relevant time period, Dorsey was employed as an Outpatient Utilization Manager Medical Director.   (ECF No. 33-6, PageID.519).   In this capacity, she was not involved in the "day-to-day medical care of inmates," but instead evaluated "requests for medical services and consultations" that cannot be provided onsite.   (*Id.*, PageID.519-20).   When reviewing such requests, Dorsey relies on the information provided or identified by the medical provider making the request.   (*Id.*, PageID.520).

-12-

On March 25, 2019, P.A. Hoover requested that Plaintiff undergo an MRI examination of his right shoulder.   In her request, Hoover noted that Plaintiff was experiencing decreased range of motion and a positive Hawkins test.   (ECF No. 33-1, PageID.378).   Hoover also noted that x-rays were "negative."   (*Id.*).   Defendant Dorsey denied this request because she was "unable to determine [the] necessity [for an MRI] with the information provided."   (ECF No. 33-6, PageID.520).   Specifically, Dorsey observed that "there was no information provided by the medical provider as to why the MRI is necessary after prior diagnostic imaging has been negative."   (*Id.*).   In her denial, however, Dorsey recommended a "re-evaluation" of the request.   (ECF No. 33-1, 33-6, PageID.378, 520).   Dorsey awaited this re-evaluation and the "additional information" it would contain so that she could re-evaluate the request.   (*Id.*).   Dorsey never received any such re-evaluation, however.   (*Id.*).

Plaintiff has presented no evidence suggesting that Dorsey's assessment and decision was inadequate, constitutes gross incompetence, or violates fundamental fairness.   Rather, Defendant's medical judgment appears to have been reasonably exercised as it was ultimately determined that Plaintiff had, in fact, suffered no shoulder injury.   Plaintiff's claim is based on nothing more than his disagreement with Defendant Dorsey's medical judgment which simply does not implicate the Eighth Amendment.   Accordingly, the undersigned recommends that Defendant Dorsey's motion for summary judgment be granted.

E.    Defendant Papendick

During the relevant time period, Papendick was employed as an Outpatient Utilization Manager Medical Director.   (ECF No. 38, PageID.535).   In this capacity, he was not involved in the "day-to-day medical care of inmates," but instead evaluated "requests for medical services and consultations" that cannot be provided onsite.   (*Id.*, PageID.535-36).   When reviewing such requests, Dorsey relies on the information provided or identified by the medical provider making the request.   (*Id.*, PageID.536).

On June 5, 2019, a request was submitted for Plaintiff to participate in an MRI examination of his right shoulder.   (ECF No. 33-1, PageID.382; ECF No. 38, PageID.536-37).   Papendick denied this request on the ground that it was merely "a duplicate" of the previous request, submitted to Defendant Dorsey, which had been denied for lack of supporting information.   (ECF No. 33-1, PageID.383; ECF No. 38, PageID.536-37).   On August 15, 2019, another request was submitted for Plaintiff to participate in an MRI examination of his right shoulder.   (ECF No. 33-1, PageID.386; ECF No. 38, PageID.537).   Papendick denied this request because it did not contain "any additional information demonstrating medical necessity warranting an MRI." (ECF No. 33-1 PageID.387; ECF No. 38, PageID.537).

Plaintiff has presented no evidence suggesting that Papendick's assessment and decision was inadequate, constitutes gross incompetence, or violates fundamental fairness.   To the contrary, Defendant's medical judgment appears to have been reasonably exercised as it was ultimately determined that Plaintiff had, in fact, suffered

no shoulder injury.   Instead, Plaintiff's claim is based on nothing more than his disagreement with Defendant's medical judgment which, as already noted, does not violate the Eighth Amendment.   Accordingly, the undersigned recommends that Defendant Papendick's motion for summary judgment be granted.

## II.   Exhaustion of Administrative Remedies

Defendants Bomber and Dorsey also move for relief on the ground that Plaintiff failed to properly exhaust his administrative remedies.   Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.   *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).   Prisoners are no longer required to demonstrate exhaustion in their complaints.   *See Jones v. Bock*, 549 U.S. 199, 216 (2007).   Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.   *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules."   *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).   In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'   The level ¶of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

-15-

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody.   The now current version of this Policy, which took effect on March 18, 2019, superseded the prior version which had been in effect since July 9, 2007.   (MDOC Policy Directive 03.02.130 (Mar. 18, 2019).   The events relevant to the present motion are governed by both versions of this Policy as such occurred both prior to and after March 18, 2019.   With respect to the issues raised by Defendants' motions, however, the two policies are identical.   Specifically, both versions of this Policy require that a prisoner, prior to submitting a grievance, attempt to resolve the issue with staff, unless prevented by circumstances beyond his control or the issue falls within the jurisdiction of Internal Affairs.   MDOC Policy Directive 03.02.130 ¶ P (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019).   The prisoner must attempt to resolve the matter with staff within two days of becoming aware that there exists a grievable issue.   (*Id*.).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff.   MDOC Policy Directive 03.02.130 ¶ V (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019).   The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included."   MDOC Policy Directive 03.02.130 ¶ R (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

-16-

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due.   MDOC Policy Directive 03.02.130 ¶ BB (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019).   If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III.   MDOC Policy Directive 03.02.130 ¶ FF (July 9, 2007); MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

Plaintiff alleges that following his transfer to MCF in February 2019, Drs. Dorsey and Bomber failed to obtain or approve an MRI examination of his injured right shoulder. Defendants concede that Plaintiff filed a grievance regarding these allegations, but argue that because the grievance was rejected as untimely, Plaintiff's efforts at exhaustion were insufficient.   The Court disagrees.

Plaintiff filed the grievance in question on June 6, 2019.   (ECF No. 33-3, PageID.461).   In his grievance, Plaintiff alleged that on June 3, 2019, Defendants Bomber and Dorsey denied requests that he undergo an MRI in violation of his Eighth Amendment rights.   Plaintiff's grievance was rejected as untimely at all three steps of the grievance process.   (*Id.*, PageID.458-62).   The rationale for finding Plaintiff's grievance untimely is not articulated in the responses thereto.   According to Defendants, Plaintiff's grievance was untimely for two reasons.

First, in his grievance, Plaintiff notes that he submitted a medical kite on March 3, 2019.   According to Defendants, because Plaintiff waited three months after submitting his kite to file a grievance, the grievance was properly rejected as untimely. The relationship, however, between the kite and the allegation that Defendants Bomber and Dorsey denied his MRI is unclear.   There is nothing from the content of Plaintiff's grievance suggesting that it concerned his kite or that the kite concerned Bomber's and Dorsey's decision to deny Plaintiff's MRI.   In fact, according to the affidavits submitted by Bomber and Dorsey, their actions giving rise to Plaintiff's complaint occurred well after March 3, 2019.   (ECF No. 33-6, PageID.516-21).

Second, Defendants argue that Plaintiff's grievance was untimely because Plaintiff knew, long before filing his grievance, that Defendants Bomber and Dorsey denied his MRI.   Again, this rationale is not articulated in the responses to Plaintiff's grievance.   Moreover, Defendants have failed to present evidence supporting this argument.   Defendants assert that two items in Plaintiff's medical records establish that Plaintiff was "made aware of" Defendant Dorsey's decision in March 2019 and Defendant Bomber's decision in April 2019.

The two documents cited by Defendants, however, do not establish that Plaintiff was informed of Defendants' decision.    (ECF No. 33-1, PageID.324, 379, 381).[2]    Neither of the cited documents establishes that Plaintiff was aware prior to June 3, 2019, that Defendants Bomber or Dorsey rejected the request to obtain an MRI examination of Plaintiff's shoulder.    On the other hand, Plaintiff asserts in an affidavit that he did learn of Defendant Bomber's and Dorsey's actions until June 6, 2019.

The Court is reluctant to interject itself into the MDOC's prison grievance process. Nevertheless, courts are not obligated to simply disregard errors or mistakes in the enforcement or application of prison grievance policies.    *See, e.g., Burnett v. Walsh*, 2020 WL 3716555 at *3-4 (E.D. Mich., June 15, 2020) (court recommended that motion for summary judgment on failure to exhaust grounds be denied after finding that MDOC "improperly rejected" prisoner's grievance)[3]; *Ashley v. Boayue*, 2020 WL 5985203 at *5-6 (E.D. Mich., Feb. 18, 2020) (court recommended that motion for summary judgment on failure to exhaust grounds be denied in part after finding that MDOC "improperly rejected" prisoner's grievance)[4].

---

[2]  While not clear from Defendants' brief, the Court interprets Defendants' citation to the medical record to refer to the identifying numbers located in the lower right-hand corner of each document.

[3]  This recommendation was adopted as the opinion of the Court after no party objected thereto.    *Burnett v. Walsh*, 2020 WL 3639564 (E.D. Mich., July 6, 2020).

[4]  This recommendation was adopted as the opinion of the Court after no party objected thereto.    *Ashley v. Boayue*, 2020 WL 4282198 (E.D. Mich., July 27, 2020).

The rationale for rejecting Plaintiff's grievance as untimely is neither evident from the content of the grievance nor the responses thereto. Likewise, Defendants' argument that Plaintiff's grievance was untimely is unsupported by the cited evidence and contradicted by Plaintiff's affidavit. Accordingly, the undersigned finds that Defendants Bomber and Dorsey have failed to satisfy their burden on the exhaustion question. The undersigned recommends, therefore, that Defendants' motion for relief on exhaustion grounds be denied.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 33) be granted in part and denied in part and this matter terminated. Specifically, the undersigned recommends that the motion for summary judgment on exhaustion grounds, asserted by Defendants Bomber and Dorsey, be denied, but Defendants' motion otherwise be granted. For the same reasons the undersigned makes this recommendation, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

-20-

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: February 4, 2022

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

-21-